UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MOHAMMAD SABOOR YAQUBI,

Petitioner,

v.

TODD BLANCHE, Attorney General of the United States, et al.,

Respondents.

CASE NO. 2:26-cv-03703-TL

ORDER OF PETITION FOR WRIT OF HABEAS CORPUS

This matter is before the Court on Petitioner Mohammad Saboor Yaqubi's Petition for Writ of Habeas Corpus ("habeas petition"). Dkt. No. 1. Petitioner, who has been detained at the Northwest Immigration Processing Center ("NWIPC") for over six months since his order of removal became final, seeks his release from custody and several injunctions regarding his future re-detention or removal. Dkt. No. 1 at 29–30. Having reviewed the petition, Respondents' return (Dkt. No. 11)[1], Petitioner's reply (Dkt. No. 14), and the relevant record, the Court GRANTS IN PART and DENIES IN PART the habeas petition.

[1] As used in this Order, "Respondents" does not include Respondent Scott, who has not appeared in this matter.

## I. BACKGROUND

Petitioner is citizen of Afghanistan. Dkt. No. 1 at 5. On February 19, 2026, an immigration judge denied Petitioner's application for asylum and ordered his removal, but also granted him withholding of removal under the Convention Against Torture. Dkt. No. 1-1 (Order of the Immigration Judge) at 2. Petitioner did not appeal the removal order to the Board of Immigration Appeals, and it became final on March 23, 2026. *See id.* at 5; Dkt. No. 1 at 3; 8 C.F.R. § 1241.1(c).

Petitioner has been held at the NWIPC since before his removal order became final. *See* Dkt. No. 1 at 3. He alleges that, during his confinement, Immigration and Customs Enforcement ("ICE") "has asked Petitioner Yaqubi to suggest third countries he could be sent to, and he complied, but none of the countries he suggested have responded to his attempts to contact them." *Id.* at 8. It does not appear that any travel document has been obtained to facilitate Petitioner's removal to any country, although Respondents allege that a travel document for Petitioner was requested from Guyana on September 25, 2026, and that ICE is "actively working to effectuate Petitioner's removal to Guyana." Dkt. No. 11 at 13. Respondents also assert that ICE began its efforts to remove Petitioner to a third country on March 25, 2026, by "requesting Petitioner's assistance in identifying potential third countries for his removal" but that Petitioner has repeatedly "refused to assist in the identification of a third country for his removal" and has "not provided evidence of contacting foreign consulates and requesting acceptance from them." *Id.* at 12.

## II. LEGAL STANDARD

### A. Habeas Petition Legal Standard

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance

of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c).

**B. Injunctive Relief Legal Standard**

A petitioner "seeking a permanent injunction . . . must demonstrate: (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Prongs three and four of the *eBay* factors merge when the Government is the party opposing injunctive relief. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The Ninth Circuit has held that a permanent injunction is appropriate where a party demonstrates it is likely to suffer irreparable injury, regardless of whether the party has already been injured. *See City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1243 (9th Cir. 2018).

## III. DISCUSSION

Petitioner asks for his immediate release on the ground that his detention has become indefinite and thus unconstitutional under *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). Dkt. No. 1 at 24–25. Petitioner also seeks injunctive relief, invoking the Court's jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1346 (United States as Respondent), and 1651 (All Writs Act). Dkt. No. 1 at 4. Specifically, Petitioner asks the Court to enjoin Respondents from (1) re-detaining him without a hearing before a neutral decision maker at which the government bears the burden of establishing flight risk or danger to the community by clear and convincing evidence based on changed circumstances; (2) re-detaining him without additional procedural requirements including obtaining a travel document for Petitioner and offering him the

opportunity for voluntary departure; (3) removing Petitioner to a third country without notice and a meaningful opportunity to respond; (4) removing Petitioner to a third country where he is likely to face imprisonment or harm; and (5) subjecting Petitioner to GPS monitoring as a condition of release "absent clear and convincing evidence that Petitioner is a flight risk or danger to the community and that no other alternatives mitigate those risks." *Id.* at 29–30.

**A. Petitioner's Continued Detention Is Unlawful Under *Zadvydas***

Under the Immigration and Nationality Act ("INA"), the government is required to remove a noncitizen with an order of removal "within a period of 90 days" after that order becomes final. 8 U.S.C. § 1231(a)(1). The Supreme Court has determined that it is "presumptively reasonable" for the Department of Homeland Security ("DHS") to detain a noncitizen for six months following entry of a final removal order while it works to remove the individual from the United States. *Zadvydas,* 533 U.S. at 701. However, "[a]fter this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* This applies even if a noncitizen has a long criminal record or a history of flight from criminal or deportation proceedings as the statute, "read in light of the Constitution's demands," simply "does not permit indefinite detention" in civil immigration proceedings—nor is indefinite civil detention constitutional at all except where a "special justification" exists that is not present in the immigration-detention context. *Id.* at 689–90. If the Government fails to rebut the noncitizen's showing, the noncitizen is entitled to release. *Id.* at 701.

//

//

//

**1. The Length of Detention Exceeds What Is Presumptively Reasonable**

Respondents admit that Petitioner's post-removal-order detention "exceeded the six-month presumption around September 23, 2026." Dkt. No. 11 at 15. Therefore, Petitioner's detention is no longer presumptively reasonable. *See Zadvydas*, 533 U.S. at 701.

**2. Petitioner Has Met His Burden Under *Zadvydas***

Petitioner cannot be removed to his country of citizenship because he has been granted withholding of removal under the Convention Against Torture, and he has no evident ties to any other country but the United States. "Courts routinely find that noncitizens under such circumstances have met their initial burden under *Zadvydas*" to provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. *Rea-Hernandez v. Bondi*, 824 F. Supp. 3d 1124, 1132 (W.D. Wash. 2026) (collecting cases). The Court makes the same finding here.

**3. Respondents Have Not Met Their Burden Under *Zadvydas***

Respondents have not rebutted Petitioner's showing that removal is not significantly likely. Respondents cannot legally remove Petitioner to Afghanistan, where an immigration judge has found he is likely to be tortured or killed. Respondents allege they have made "efforts" to remove Petitioner by asking him to arrange his own removal to a third country (Dkt. No. 11 at 12) but only requested a travel document for Guyana on September 25, 2026, once Petitioner's post-removal order detention had already exceeded six months (*id.* at 12–13). Respondents offer no indication that Petitioner has any relationship to Guyana, that Guyana has any interest in accepting Petitioner, or that Guyanese officials have responded or will ever respond to the request for travel documents.

Once again, "[t]he Court is perplexed and confounded by Respondents' insistence that the burden of facilitating removal should be shifted to someone whom they themselves hold in a

prison-like detention setting." *Alizada v. Blanche*, No. C26-2093, 2026 WL 2085850, at *5 (W.D. Wash. July 20, 2026). The court adopts and incorporates by reference its analysis from *Alizada* and again finds that the facts in *Pelich v. INS*, 329 F.3d 1057 (9th Cir. 2003), on which Respondents rely, are "nothing like the facts in the instant case." *Alizada,* 2026 WL 2085850, at *5; *see also Kara v. Bondi*, No. C26-105, 2026 WL 322772, at *4 (W.D. Wash. Feb. 6, 2026) ("Here, Respondents do not point to sufficient evidence that Petitioner was noncooperative. The government's sworn declaration says that Petitioner 'refused to provide any third countries he would be willing to go to,' which does not amount to an affirmative misrepresentation or refusal to apply for travel documents as in *Pelich*[.]" (citation modified)). The Court further finds that Respondents' skeletal "effort" to remove Petitioner to a third country (a single request months after the statutory deadline) does not make Petitioner's removal reasonably foreseeable. *See Torriente-Vela v. Blanche*, No. C26-2246, 2026 WL 2629683, at *4 (W.D. Wash. Aug. 18, 2026) ("Even concerted efforts, if fruitless, do not meet the standard; courts routinely reject government arguments that equate 'We're trying' with 'We will." (citation modified) (collecting cases)). Therefore, the Court finds that Respondents have failed to provide evidence to rebut Petitioner's showing that removal is not significantly likely.

Accordingly, the Court finds that Petitioner's removal is not significantly likely in the reasonably foreseeable future, and a writ of habeas corpus is warranted. The Court grants Petitioner's request and orders Respondents to immediately release him from custody.

**B. Requests for Injunctive Relief**

The Court now turns to Petitioner's requests for injunctive relief.

**1. Re-Detention and GPS Monitoring**

Petitioner seeks "an order preventing re-detention unless Respondents establish by clear and convincing evidence at a hearing before a neutral decisionmaker that he is a flight risk or a

danger to the community, based on changed circumstances after [his] most recent release by ICE[.]" Dkt. No. 1 at 4. He also requests the Court order Respondents to meet a specific set of conditions prior to any re-detention, namely, that Respondents: (1) obtain a valid travel document for Petitioner; (2) provide the valid travel document to Petitioner and his counsel; (3) offer Petitioner the opportunity to leave on his own within two months; and (4) make concrete arrangements for Petitioner to be put on a removal future should Petitioner choose not to leave on his own. *Id.* at 29–30.

Petitioner has not demonstrated that the procedures he requests are supported by the Constitution, statute, or case law,[2] and the Court does not find that Petitioner will suffer irreparable harm if the Court does not order Respondents to follow these enhanced procedures before re-detaining him. Similarly, Petitioner has not demonstrated that he will suffer irreparable harm if the Court does not issue a permanent injunction relating to GPS monitoring.

Therefore, Petitioner's requests for injunctive relief related to any future re-detention are denied. To be clear, the Court's finding that Petitioner's continued detention under *Zadvydas* is unlawful encompasses any future period of immigration detention until and unless there is a change in circumstances such that Respondents become able to rebut Petitioner's showing that there is no significant likelihood of his removal in the reasonably foreseeable future. However, by what standard and in what forum such a showing must be made are questions beyond the scope of the facts and arguments presented in this case.

**2. Third-Country Removal**

Petitioner makes two requests related to the prospect of his removal to a third county—that is, a country other than Afghanistan. First, he asks that the Court "[o]rder that Respondents

[2] Petitioner identifies two previous cases in which courts in this District have granted habeas relief under *Zadvydas* along with re-detention injunctions of the type he now seeks. Dkt. No. 1 at 30 (citing *Do v. Scott*, No. C25-2187, 2025 WL 3496909, at *6 (W.D. Wash. Dec. 5, 2025); *Tang v. Bondi*, No. C25-1473, 2025 WL 3551381, at *3 (W.D. Wash. Dec. 11, 2025)). However, neither of these orders explains the basis for ordering this relief.

may not remove or seek to remove Petitioner to a third country without notice and meaningful opportunity to respond in compliance with the [INA] and due process in reopened removal proceedings." Dkt. No. 1 at 30. Next, Petitioner asks the Court to "[o]rder that Respondents may not remove Petitioner to any third country where he is likely to face imprisonment or other punishment upon arrival." *Id.*

**a. Due Process and Third Country Removal**

Removal to a third country is permissible *only* if it is "impracticable, inadvisable, or impossible" to remove a noncitizen to: (a) the country the noncitizen has designated for removal; (b) the country of which the noncitizen is a subject, national, or citizen; (c) the country from which the individual was admitted to the U.S., or which contains the port from which they disembarked for the U.S. or a contiguous territory; or (d) the noncitizen's country of birth (or the country that now contains their birthplace) or immediate previous residence. 8 U.S.C. § 1231(b)(2)(E). Under such circumstances, the government may remove the noncitizen to "another country whose government will accept [them] into that country." *Id.* § 1231(b)(2)(E)(vii).

Respondents assert that an injunction is unnecessary because "[t]he relief Petitioner seeks—namely, notice and a meaningful opportunity to respond—are already DHS policy." Dkt. No. 11 at 17. But the "policy" Respondents refer to—a DHS memorandum issued March 30, 2025 (*see id.* at 9–10)—outlines procedures that this Court has already found "fall far short of what court[s] in this District and Circuit have held that due process requires." *Elshourbagy v. Bondi*, 817 F. Supp. 3d 1102, 1115 (W.D. Wash. 2025). Once again, "Respondents fail to address the gaps between the process Petitioner seeks (and that courts have held is required) and the process provided by the ICE policy." For the reasons previously explained in *Elshourbagy*, *see id.* at 1114–16, which the Court adopts here in full, the Court concludes that Petitioner meets

the standard for injunctive relief regarding his request for additional procedural protections before any removal to a third country. Before Petitioner may be removed to a third country, he must be given an opportunity to respond, and—if he has a fear of persecution or torture—allowed to seek relief in reopened removal proceedings before an Immigration Judge.

Therefore, the Court grants Petitioner's request to "[o]rder that Respondents may not remove or seek to remove Petitioner to a third country without notice and meaningful opportunity to respond in compliance with the [INA] and due process in reopened removal proceedings[.]" Dkt. No. 1 at 30.

**b. Punitive Third-Country Banishment**

In addition to the procedural concerns discussed above, Petitioner asks for an order enjoining his removal to "any third country where he is likely to face imprisonment or other punishment upon arrival" (*id.*), alleging that Respondents' current policy places him at risk of removal that would violate the Eighth Amendment's prohibition of cruel and unusual punishment, the Fifth Amendment's prohibition of extrajudicial punishment, and the long-established rule, dating to *Wong Wing v. United States*, 163 U.S. 228, 233–34 (1896), that no "infamous punishment" in addition to deportation may be imposed for immigration violations without a proper criminal trial (*id.* at 27–28).

This Court addressed this argument recently in *Alizada*, 2026 WL 2085850, at *8. The Court adopts the reasoning set forth in *Alizada* here. On this record and for the same reasons set forth in *Alizada*, the Court cannot find that Petitioner's removal to a third country would constitute unconstitutional punishment. The request is DENIED without prejudice.

//

//

//

## IV. CONCLUSION

Accordingly, Petitioner's Petition for Writ of Habeas Corpus (Dkt. No. 1) is GRANTED IN PART and DENIED IN PART. It is hereby ORDERED:

(1) Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

(a) SHALL release Petitioner from detention **within twenty-four (24) hours** of this Order under appropriate conditions of release;

(b) ARE PROHIBITED from removing or seeking to remove Petitioner to any third country without notice and a meaningful opportunity to be heard, including and—if he has a fear of persecution or torture—reopened removal proceedings before an immigration judge.

(2) Petitioner's requests for injunctive relief regarding re-detention and GPS monitoring are DENIED.

(3) Petitioner's request for an order prohibiting third-country removal as unconstitutionally punitive is DENIED without prejudice.

Dated this 5th day of November, 2026.

Tana Lin
United States District Judge